UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOHNNY BAKER,

                Petitioner,

    v.

S. LAKE,

                Respondent.

No.  1:18-cv-01642-SKO (HC)

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

**(Doc. 1)**

      Petitioner, Johnny Baker, is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner contends his Due Process rights were violated during a prison disciplinary hearing.

**I.**    <u>Background</u>

      On March 30, 2011, Petitioner pled guilty to four counts of interfering with commerce by robbery (18 U.S.C. § 1951(a)) and four counts of using a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)).  The United States dismissed one court of using a firearm and

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

Petitioner was subsequently sentenced to 684 months federal custody. His projected release date is May 28, 2061.

The actions underlying the current petition took place at the United States Penitentiary at Atwater. On January 30, 2017, random cell searches were conducted in Petitioner's housing unit. Under Petitioner's mattress, officers found an envelope that contained several pictures. One of the pictures in the envelope had abnormal cuts on it, so it was submitted for an illicit drug presence test utilizing a Narcotics Identification Kit ("NIK"). The NIK A test turned orange, indicating the presence of drugs, so further testing was completed using a NIK B test. The NIK B test produced a yellow to light green color, indicating it was positive for heroin.

On January 31, 2017, Petitioner was given an Incident Report and supporting documents. Petitioner was charged with possession of illicit drugs in violation of BOP Code 113. Petitioner was advised of his rights and elected to make a voluntary statement. Petitioner stated, "I live on the bottom bunk. I am taking responsibility for the pictures. But I want the picture re-tested." Petitioner declined to have witnesses present at his hearing.

On February 1, 2017, a unit disciplinary hearing was conducted. Petitioner signed a Notice of Disciplinary Hearing form, acknowledging his rights and waiving his right to a staff representative and right to call witnesses to testify at the hearing. Petitioner stated, "I take responsibility for the pictures. I had a bunch of them in an envelope under my bunk. They were just compound pictures. I had no idea or knowledge they would test positive for anything. The matter was then referred to the Disciplinary Hearing Officer ("DHO").

On February 13, 2017, the DHO held a disciplinary hearing. The DHO advised Petitioner of his rights, read the Incident Report to him, and provided Petitioner an opportunity to present his defense. Petitioner stated, "I put the pictures under my bed. I've had the pictures for over two years. My cell has been shook down for the last two years and now this? These are compound

pictures. So when they tell me I have drugs, I don't believe it."

The DHO made the following findings and conclusions:

The inmate's due process rights were read and reviewed by the DHO. The DHO confirmed the inmate received a copy of his incident report, did NOT want to call any witnesses, did NOT want a staff representative, and did NOT have any evidence to submit to the DHO. The inmate understood his due process rights, and was prepared to proceed with the disciplinary hearing. . . .

The officer's written report notes that, "On January 31, 2017, at approximately 6:25 pm I conducted a random search [of] cell 122 in Unit 3A. The cell is assigned to [Petitioner]. As I conducted the cell search I observed an envelope containing several pictures underneath the bottom bunk mattress. One of the pictures in the envelope had abnormal cuts on it. The photo was subsequently tested, [u]tilizing NIK test kit A, this yielded a positive test result with positive color orange, indicating the need for further testing. A second test with the NIK test B, this produced a result with a color change yellow and slow[ly] changed to light green indicating the presence of Heroin. . . .

The DHO finds that [Petitioner] committed the prohibited act of Possession of Narcotics, which is a violation of Code 113.

The DHO relied on the officer's written report as well as other documentary evidence[,] a supporting memo, evidence photos, the NIK test certification list, PowerPoint slides from the NIK course and the inmate's quarters assignment history. The supporting memo is from the testing officer (as SIS Technician). Per the memo, the photograph found in [Petitioner]'s cell had the bottom left and top left corner cut out. The photograph was tested with NIK test kit A, which turned orange. This indicated a positive test for the presence of Amphetamines. The photo was then tested with NIK test B, which turned yellow and then slowly changed light green. This indicates a positive test for the presence of Heroin. The evidence photos are of the photograph and the positive NIK tests. The photograph has abnormal cuts to its left top corner and bottom right corner. The NIK tests that are photographed are NIK tests A and B. Color photos of the NIK tests confirm that NIK test kit A turned orange and NIK test kit B turned light green. The NIK test certification list shows that [the] SIS Technician (who tested the photograph) is NIK test certified. PowerPoint slides from the NIK test course shows that the SIS Technician utilized the correct NIK test procedures in determining the photograph contained Heroin. [Petitioner]'s quarters assignment history shows that he was assigned to the cell where the photograph laced with Heroin was found (Cell 122 in Unit 3A) on the date/time of [the] incident (on 01/30/2017, at approximately 6:25 pm).

The DHO also considered the statements of the inmate during the disciplinary hearing. During the DHO hearing, [Petitioner] stated, "I put the pictures under my bed. I've had the picture for over two years. My cell has been shook down for the last two years and now this? These are compound pictures. So when they tell me

3

I have drugs, I don't believe it". The DHO considered [Petitioner]'s exculpatory statements that the photograph did not contain drugs, but deemed them less credible than the evidence presented against [Petitioner]. The photograph was NIK tested by a NIK certified staff member, who utilized the correct NIK test procedure. The greater weight of evidence shows that the photograph (of which [Petitioner] admits to having possessed) had Heroin on it.

Based upon the greater weight of the evidence (the officer's written report, the supporting memo, the evidence photos, the NIK test certification list, the NIK PowerPoint slides and the inmate's quarters assignment history) the DHO is convinced that [Petitioner] committed the prohibited act of Possession of Narcotics, which is a violation of Code 113.

As punishment for violating Code 113, the DHO sanctioned Petitioner with 41 days loss of good conduct time, 30 days disciplinary segregation, 30 days disciplinary segregation suspended, 6 months loss of commissary, and 6 months loss of visitation.

On November 29, 2018, Petitioner filed his petition for writ of habeas corpus in this Court. The parties do not dispute, venue, personal service, subject matter jurisdiction, or exhaustion of remedies.

## II.    "Some Evidence" Supported the DHO's Finding

Petitioner alleges one ground for habeas relief. He contends his due process rights were violated because there was no evidence that the picture contained narcotics. (Doc. 1 at 8.)

### A.    Standard of Review

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an impartial hearing body; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (4) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1984) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). Further, due process requires that a disciplinary decision be supported by "some evidence." *Id.* at 455 (citing *United States ex rel.*

4

*Vatauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)).

The Supreme Court "has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence." *Id*. at 455 (internal citations omitted). The "some evidence" standard "is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced.'" *Id* (citing *Vatauer*, 273 U.S. at 106). The Court does not need to examine the entire record, independently assess the credibility of witnesses, or weigh the evidence in order to determine whether the standard is satisfied. *Id*. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56 (internal citations omitted). Therefore, the Due Process Clause does not require the Court to "set aside decisions of prison administrators that have some basis in fact." *Id*. at 456.

**B.  The DHO's Finding Was Properly Supported by "Some Evidence"**

Due process requires that the DHO's decision be supported by "some evidence." *Hill*, 472 U.S. at 455. The standard for reviewing prison disciplinary findings as set forth in *Hill*, is "minimally stringent." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The Court will not re-weigh the evidence or make its own assessment as to the credibility of the witnesses. *Hill*, 472 U.S. at 455. If there is any reliable evidence in the record to support the disciplinary findings, the "some evidence" standard is satisfied, and the decision must be upheld. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994); *Hill*, 472 U.S. at 455-56.

Here, Petitioner claims there was no evidence to support the DHO's determination that there was an illegal substance on the photograph. (Doc. 1 at 8.) The NIK tests change color based on the presence of different drugs. Here, the NIK A test turned orange, which the testing officer found indicated either the presence of a drug or the presence of Amphetamines. However, Petitioner claims the NIK A did not indicate any drugs were on the picture because the test would have

5

changed from orange to brown if Amphetamines were present. *Id*. The officer used the NIK B test to confirm the NIK A test results. If Amphetamines were present, the NIK B test would have turned yellow; however, the NIK B test changed from yellow to light green, indicating the presence of Heroin, not Amphetamines. *Id*. at 8-9. Based on these results, Petitioner states the tests did not confirm there was any illegal substance on the photograph.

This Court cannot reweigh the evidence that was presented to the DHO. Instead, the Court must determine whether there was "some evidence" to support the DHO's decision. The technician that tested the picture is NIK test certified and the DHO concluded that the technician utilized the correct NIK test procedures on the photograph. The technician decided that the NIK A test was positive for an illegal substance, because the test turned orange. He subsequently tested the photograph using the NIK B test, which he determined came back positive for Heroin. In finding the photograph contained an illegal substance, the DHO relied on the technician's written report, as well as a supporting memo, evidence photos, the NIK test certification list, and PowerPoint slides from the NIK course. The Court finds that Petitioner's admission that he owned the photograph along with the written evidence submitted to the DHO constitute the required "some evidence" to support the DHO's finding that Petitioner violated BOP Code 113 by possessing narcotics.

**III.    Conclusion and Order**

Accordingly, the Court hereby ORDERS that:

1. The petition for writ of habeas corpus is DENIED; and

2. The Clerk of Court is DIRECTED to enter judgment for Respondent.


IT IS SO ORDERED.

Dated:    __April 1, 2019__                    _____/s/ *Sheila K. Oberto*_____
                                                      UNITED STATES MAGISTRATE JUDGE